# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| IMPLICIT, LLC, § | |
|     *Plaintiff,* § | |
| v. § | Civil Action No.  4:22-cv-00940 |
| § | Judge Mazzant |
| WAYFAIR INC. and WAYFAIR LLC, § | |
|     *Defendants.* § | |
| § | |
| § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Wayfair's Motion to Transfer (Dkt. #15). Having considered the motion and the relevant pleadings, the Court finds the motion should be **DENIED**.

### BACKGROUND

This is a dispute under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. Plaintiff Implicit, LLC alleges that Defendants Wayfair Inc. and Wayfair LLC's use of its website, specifically its e-commerce platform and the computer systems therein, infringes one or more claims of U.S. Patent No. 8,856,185 ("the '185 patent").

**I.	Factual Background**

This is a suit brought by Implicit, LLC ("Implicit") against Wayfair Inc. and Wayfair LLC ("Wayfair") (Dkt. #1 ¶ 1) for infringement of the '185 patent. Implicit alleges that Wayfair's use of Wayfair's website, specifically the e-commerce platform and the computer systems therein, infringes one or more claims of the '185 patent (Dkt. #1 ¶ 21).

Implicit is a Washington limited liability company with a place of business in the Eastern District of Texas (Plano, TX) (Dkt. #1 ¶ 2). Implicit is the assignee and owner of the right, title,

and interest in and to the '185 patent (Dkt. #1 ¶ 20) which discloses an invention related to solutions to technical problems involving managing access to data structures to locate an object, specifically technical problems related to flexibility in the handling of object attributes and views into a namespace (Dkt. #1 ¶ 13).

Wayfair LLC[1] is a Delaware limited liability company with its headquarters in Boston, Massachusetts, and a place of business, a home delivery warehouse (Dkt. #15 at p. 3), in Flower Mound, Texas (Dkt. #1 ¶ 3). Flower Mound is located within Denton County in the Eastern District of Texas. The current and former Wayfair employees responsible for Wayfair's website, the accused instrumentality, are predominantly located in Boston, Massachusetts[2] (Dkt. #15 at p. 3).

## II. Procedural History

On November 11, 2022, Implicit initiated this case against Wayfair for alleged infringement arising under 35 U.S.C. § 1 *et seq* (Dkt. #1 ¶ 1). On May 19, 2023, Wayfair moved to transfer this case to the District of Massachusetts under 28 U.S.C. § 1404(a) (Dkt. #15). On June 2, 2023, Implicit responded (Dkt. # 18). On June 12, 2023, Wayfair replied (Dkt. #22).

## LEGAL STANDARD

Section 1404(a) permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case

---

[1] The Court will discuss the relevance of Wayfair, Inc. *infra*.
[2] The Court will discuss in more detail *infra* the location of current and former Wayfair employees who are responsible for the accused instrumentality.

consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964)). The purpose of § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

In a patent case, a motion to transfer under 28 U.S.C. § 1404(a) is governed by the law of the regional circuit, in this case the Fifth Circuit. *In re TS Tech U.S. Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary

problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*; *TikTok*, 85 F.4th at 358. The plaintiff's choice of venue is generally not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). "[A] district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318).

## ANALYSIS

### I. Parties to the Motion

As an initial matter, the Court considers whether the Motion to Transfer was properly filed on behalf of both defendants. Wayfair and Implicit disagree on whether Wayfair Inc. participated in the Motion to Transfer. Implicit contends that only Wayfair LLC participated in the Motion to Transfer, meaning that Wayfair Inc. concedes that litigation is convenient in the Eastern District

4

of Texas (Dkt. #18 at p. 5), while Wayfair believes the Motion was properly brought on behalf of both parties and, further, "[Wayfair Inc.] should not have been sued in the first place" (Dkt. #22 at p. 2). The language of § 1404(a) "contemplate[s] consideration of the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 203.

The Court finds the Motion was properly filed on behalf of both Wayfair Inc. and Wayfair LLC (Dkt. #15 at p. 1). Because the convenience analysis considers all parties joined in the proceedings, Wayfair's reliance on the arguments that venue would be more convenient in the District of Massachusetts by focusing on the convenience of Wayfair LLC rather than Wayfair Inc. is proper, especially since Wayfair contends "Wayfair Inc. neither owns nor operates the accused instrumentality, Wayfair's website, and thus is expected to have no relevant documents or witnesses" (Dkt. #22 at p. 2).

## II. Convenience Factors

Wayfair argues that this case should be transferred to the District of Massachusetts under § 1404(a). Neither party disputes that this case could have been filed in Massachusetts. The Court therefore moves on to the second part of the transfer inquiry: whether transfer is appropriate under the private and public interest factors. After analysis of the factors, the Court finds Wayfair has not met its burden to show the District of Massachusetts is clearly more convenient, and the Court denies Wayfair's request to transfer.

### A. Private Interest Factors

#### 1. The Relative Ease of Access of Sources of Proof

This factor "focuses on the location of 'documents and physical evidence relating to the [case].'" *TikTok*, 85 F.4th at 358. In patent infringement cases, courts often consider "the bulk of

5

the relevant evidence usually comes from the accused infringer" and courts recognize "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009)) (applying Fifth Circuit law).

The relative ease of access to sources of proof is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient. *Volkswagen II*, 545 F.3d at 316. "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *TikTok*, 85 F.4th at 358. "But when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *Id.* (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)). "The location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Planned Parenthood*, 52 F.4th at 630. When it comes to electronically stored sources of proof, the Court should consider "the location of servers where documents are stored" as well as "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Wayfair contends that the vast majority of the relevant documents originate from the Wayfair headquarters in Boston (Dkt. #15 at p. 6). Additionally, Wayfair contends that document custodians and engineers who generate and maintain technical documents for the company are located in Boston (Dkt. #15 at p. 6). Implicit asserts that because Wayfair's declarant admits that "all electronic documents relating to the accused instrumentality in the custody, possession, or

6

control of Wayfair are accessible through Wayfair's cloud-based storage through Google Cloud Platform" the factor is neutral (Dkt. #18 at p. 6). Wayfair does concede that "all electronic documents relating to the accused instrumentality in the custody, possession, or control of Wayfair are accessible through Wayfair's cloud-based storage through Google Cloud Platform" and that Wayfair "has no control over the identity or location of servers used by Google to provide its Cloud Platform service to Wayfair" (Dkt. #15, Exhibit 1 ¶ 16). Even though the document custodians and documents themselves are located in Boston, because the documents are electronically available, and Wayfair does not demonstrate that no Wayfair employee in this District could access the electronically available documents, the Court finds that this factor is neutral.

### 2. The Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure the attendance of witnesses. *TikTok*, 85 F.4th at 360 (citing *Volkswagen II*, 545 F.3d at 315). "This factor favors transfer where 'non-party witnesses . . . are outside th[is] District's subpoena power' and 'a proper venue that does enjoy absolute subpoena power for both depositions and trial' is available." *Id.* (citing *Volkswagen II*, 545 F.3d at 316). This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (quoting *Planned Parenthood*, 52 F.4th at 630–31).

Wayfair assumes that due to a large reduction in force where several relevant teams lost employees, those employees would be subject to third-party subpoena in the District of Massachusetts, not in this District (Dkt. #15 at p. 7). Implicit claims that Wayfair has not identified a witness that will require compulsory process (Dkt. #18 at p. 7). Wayfair, on reply, points to one former employee, Jason DeGeorge (Dkt. #22 at p. 5; Dkt. #15, Exhibit 1 ¶ 22 (naming DeGeorge)).

7

This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *TikTok*, 85 F.4th at 360 (citing *Planned Parenthood*, 52 F.4th at 630–31). Additionally, even though Wayfair names at least one former employee outside this District, Jason DeGeorge, nowhere does Wayfair say that any former Wayfair employee would be unwilling to testify. *See id.* at 361 (citing *Planned Parenthood*, 52 F.4th at 630–31) (finding district court did not abuse its discretion holding this factor neutral when party moving for transfer had "failed to identify any unwilling non-party witness"). Because neither side has identified an unwilling non-party witness, the Court finds that this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

"The third private factor, which considers the conveniences for witnesses who attend willingly, has been described as the most important factor." *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021) (citations omitted). In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). The Fifth Circuit uses a "100-mile threshold" to assess this factor. *TikTok*, 85 F.4th at 361 (citing *Volkswagen II*, 545 F.3d at 315). "When the distance between an existing venue for trial . . . and a proposed venue under 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id*. While a court can consider imposed costs on witnesses when the proposed transfer is within the 100-mile threshold, "this factor has greater significance when the distance is greater than 100 miles." *Radmax*, 720 F.3d at 289. The 100-mile rule applies here because the distance between the Eastern District of Texas and the District of Massachusetts is approximately 1,700 miles.

Wayfair argues that this factor favors transfer to District of Massachusetts because the key witnesses with knowledge of the accused instrumentality are in or have easy access to Boston and Boston is the location of key evidentiary documentary evidence (Dkt. #15 at p. 8). Implicit points out that in addition to Wayfair's employees that are based in Massachusetts, Wayfair's engineers are spread across the country outside of the 100-mile radius of both this District and the District of Massachusetts (Dkt. #18 at p. 8). Wayfair identifies employees with knowledge of the accused instrumentality that work in Boston, but it also identifies employees with knowledge in California, Colorado, Florida, Maine, New York, North Carolina, Pennsylvania, Rhode Island, Texas, Virginia, Canada, and India (Dkt. #15, Exhibit 1 ¶¶ 19–22). Of the employees identified by Wayfair, forty-nine of the seventy employees (70%) are in Massachusetts and would find it more convenient to travel to Boston rather than to Texas (Dkt. #15, Exhibit 1 ¶¶ 19–22). The Federal Circuit, in applying Fifth Circuit law, has "held that 'the "100-mile" rule should not be rigidly applied' where 'witnesses . . . will be required to travel a significant distance no matter where they testify.'" *Apple*, 979 F.3d at 1341 (Fed. Cir. 2020) (quoting *Genentech*, 566 F.3d at 1344 (Fed. Cir. 2009)). Except for the three employees located in Texas, the employees located outside of Massachusetts, across the country and internationally, will have to travel a distance no matter where they testify (Dkt. #15, Exhibit 1 ¶¶ 19–22). Due to the location of the majority of the relevant witnesses, the Court finds this factor to slightly favor transfer.

    **4.    Other Practical Problems**

The Court "considers all other practical problems that make trial of a case easy, expeditious, and inexpensive." *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315).

Both parties agree that this factor is neutral (Dkt. #15 at pp. 8–9; Dkt. #18 at p. 9). The Court finds this factor is neutral.

### B. Public Interest Factors

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315.

#### 1. The Administrative Difficulties Flowing from Court Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). Both parties rely on the publication of case management statistics from the United States federal courts available online (Dkt. #15 at p. 11; Dkt. #18 at p. 9). According to those statistics, the median number of months from filing to disposition for civil trials is 8.8 months in the Eastern District of Texas and 10.0 months in the District of Massachusetts (Dkt. #15 at p. 12). The median number of months from filing to trial for civil trials is 24.5 months in the Eastern District of Texas and 34.5 months in the District of Massachusetts (Dkt. #15 at p. 11). Additionally, the Federal Circuit acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). However, because Implicit does not provide the Court with any reason to find this case needs a particularly "rapid disposition," the Court is not inclined to find this factor "worthy of important weight." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021). Thus, this factor weighs very slightly against transfer.

### 2. The Local Interest in Having Localized Interests Decided at Home

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th 413, 435 (5th Cir. 2022) (citations omitted). This factor recognizes that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The Court should look to the "connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435). "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quoting *Def. Distributed*, 30 F.4th at 435). "[T]his factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Id.* (quoting *Volkswagen II*). "Also, this factor can weigh against transfer when the 'citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district].'" *TikTok*, 85 F.4th at 364 (quoting *Planned Parenthood*, 52 F.4th at 632).

Implicit argues that because of its place of business in the Eastern District of Texas, there remains a local interest in this District (Dkt. #18 at p. 10). While the Court recognizes that general presence in the forum should not be *heavily* weighed in this factor's analysis, that does not mean Implicit's presence in the District should not be accorded *any* weight. While recognizing limited nature of Implicit's interest in this District, the Court does ultimately recognize that Implicit does have an interest and presence in this District.

Wayfair contends that the local interest of the Eastern District of Texas is the same as all other districts in this nation (Dkt. #15 at p. 10). Because the viewers of Wayfair's website are located nationwide, the interest of Wayfair's website users in the Eastern District of Texas "could apply virtually to any judicial district or division in the United States." *Volkswagen II*, 545 F.3d at 318; *AlmondNet Inc. v. Samsung Elecs. Co.*, No. W-21-CV-00891-ADA, 2022 WL 17574082, at *11 (W.D. Tex. Nov. 28, 2022) (finding both districts have the same local interest when delivery of targeted ads involved customers in both districts). Therefore, the interest of Wayfair's customers is the same in both the Eastern District of Texas and the District of Massachusetts.

Wayfair is headquartered in the District of Massachusetts and the alleged events giving rise to this action were overseen and occurred there (Dkt. #15 at p. 11). Dozens of current and former Wayfair employees responsible for, or who worked on, the accused instrumentality are located predominantly in Boston (Dkt. #15 at p. 3). Because the Court considers the "significant connections between a particular venue and the events that gave rise to a suit," the Court finds that the residents of the District of Massachusetts have significant connections to the events giving rise to the suit and therefore a stronger local interest.

The Court recognizes that Wayfair does have a presence in this District because of its warehouse in Flower Mound. Wayfair states that its warehouse in Flower Mound "is a home delivery warehouse and has nothing to do with the accused feature on Wayfair's retail website," and "none of the employees who work at the warehouse in Flower Mound has any responsibilities for website operations" (Dkt. #15, Exhibit 1 ¶ 13). Related to the retail website, Wayfair states that "dozens of current Wayfair employees (plus dozens more former Wayfair employees) have worked on the accused [] instrumentality," and those employees are "predominantly in Boston" (Dkt.

#15, Exhibit 1 ¶ 17). But Wayfair also concedes that at least one employee who works on the accused instrumentality is located in Sachse, Texas (Dkt. #15, Exhibit 1 ¶ 21).

Looking to the connections between the District of Massachusetts and these events giving rise to this action, the Court finds that this factor slightly favors transfer.

### 3.     Familiarity of the Forum with Governing Law

This factor "considers the current district's 'familiarity with the law that will govern the case.'" *TikTok*, 85 F.4th at 365 (quoting *Volkswagen II*, 545 F.3d at 315). Both parties agree that this factor is neutral (Dkt. #15 at p. 12; Dkt. #18 at p. 10). The Court finds this factor is neutral.

### 4.     Avoidance of Conflict of Laws

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" *Def. Distributed*, 30 F.4th at 436 (quoting *Volkswagen II*, 545 F.3d at 315). Both parties agree that this factor is neutral (Dkt. #15 at p. 12; Dkt. #18 at p. 9). The Court finds this factor is neutral.

## III.   Summary

Throughout its pleadings, Wayfair seems to argue that the based on the facts and circumstances, the District of Massachusetts is the only place where this lawsuit would be appropriate. While the Court understands Wayfair's arguments, it is neither the law nor the case that the only place where this suit would be appropriate is the District of Massachusetts. The question on a motion to transfer is whether an equally appropriate transferee venue is clearly more convenient.

The Court also recognizes this decision is a close call as far as the balance of factors. The Court finds that two factors weighs slightly in favor of transfer, and one weighs slightly against

transfer, while five factors are neutral. In light of that close call, and in light of the Court's discretion on decisions to transfer, the Court finds that Wayfair has not met its high burden to demonstrate that the District of Massachusetts is clearly more convenient. The Court declines to transfer this case to the District of Massachusetts.

## CONCLUSION

It is therefore **ORDERED** that Wayfair's Motion to Transfer (Dkt. #15) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 20th day of August, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE